STATE EX REL. WAL-MART STORES, INC., A DELAWARE CORPORATION, RELATOR, V. HONORABLE ALFRED J. KORTUM, JUDGE, DISTRICT COURT FOR SCOTTS BLUFF COUNTY, NEBRASKA, RESPONDENT.

559 N.W.2d 496

Filed February 21, 1997.   No. S-95-1358.

Philip M. Kelly, of Nichols, Douglas, Kelly, and Meade, P.C., for relator.

No appearance for respondent.

Tylor J. Petitt and amicus curiae Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

This is an original action for a peremptory writ of mandamus brought by relator, Wal-Mart Stores, Inc. (Wal-Mart). We are asked to determine whether a writ should issue disqualifying the law firm of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder, and Hofmeister, P.C. (Van Steenberg), from representing a party in an action against Wal-Mart because of the firm's prior representation of Wal-Mart in another case.

We set forth a "substantially related" test and conclude that Van Steenberg's prior representation of Wal-Mart is not substantially related to the present action against Wal-Mart because the factual and legal issues are not so similar as to create a gen-

uine threat that Van Steenberg may have received confidential information in the prior action that could be used against Wal-Mart in the present action. As a result, we decline to issue a peremptory writ of mandamus compelling the district court for Scotts Bluff County to vacate its order denying Wal-Mart's motion to disqualify Van Steenberg.

## BACKGROUND

The factual statement of this case is taken largely from the findings of fact made by District Judge Donald E. Rowlands II, who was appointed as special master by this court for the taking of evidence and for recommending findings of fact and conclusions of law. Additional facts were taken from the pleadings, the proceedings before the district court on the original motion to disqualify counsel, and various exhibits.

On July 21, 1994, Debra J. Holden filed suit against the Scottsbluff Wal-Mart store through her counsel, Leonard W. Shefren of Omaha, Nebraska. See Holden v. Wal-Mart Stores, Inc., Scotts Bluff County District Court, docket 41883. In her petition, Holden asserts that Wal-Mart was negligent in failing to properly maintain and/or warn of a hole in the store's parking lot and that this negligence caused her personal injury when she fell into the hole on July 1, 1992. Subsequent to Wal-Mart's filing an answer, Shefren withdrew as attorney of record. On or about September 7, 1995, Tylor Petitt, an attorney with Van Steenberg, entered an appearance as Holden's counsel.

Van Steenberg had previously defended Wal-Mart, through its partner Steve Smith, in four tort cases in the district court for Scotts Bluff County: Ramirez v. Wal-Mart Stores, Inc., docket 34217; Sanderson v. Wal-Mart Stores, Inc., docket 34218; Pottorff v. Wal-Mart Stores, Inc., docket 38913; and Nebarez v. Wal-Mart Stores, Inc., docket 41412.

The Ramirez and Sanderson cases involved claims of false arrest and malicious prosecution and ended in 1987 with summary judgments in favor of Wal-Mart. The Pottorff case involved claims that Wal-Mart was negligent in failing to properly maintain and/or warn of a dangerous condition in the floor of the store and that this negligence caused personal injury when the customer slipped and fell in an area that had previ-

ously been wet-mopped. The Pottorff case concluded in June 1993, with a jury verdict in favor of the plaintiff, approximately 1 year after Holden was injured but 2 years before Petitt entered an appearance as Holden's counsel. The Nebarez case involved claims by a customer who was injured in an assault inside the store and concluded in August 1994, with summary judgment in favor of Wal-Mart.

Wal-Mart does not have an outside claims administration firm or insurance agency that handles claims made against it. Instead, Wal-Mart relies on its staff of in-house attorneys to administer all claims and to hire legal counsel. A Wal-Mart attorney, Michelle Johnson, retained Smith to defend Wal-Mart in the aforementioned cases. In preparation for its defenses in those cases, Smith had complete access to the Scottsbluff Wal-Mart store and to its managers and staff.

While assisting Smith in preparation for Wal-Mart's defenses, Johnson related to Smith Wal-Mart's general defense strategy, internal policies, and the conduct of similar lawsuits in other parts of the country. In addition, Kern Radtke, manager of the Scottsbluff store, gave Smith complete access to procedure manuals, lists, and sales information. After Smith concluded his representation of Wal-Mart in the Nebarez case, he was informed by Wal-Mart that neither he nor Van Steenberg would represent Wal-Mart in any further matters.

The district court entered an order denying Wal-Mart's motion to disqualify Van Steenberg from further representation of Holden in her tort action against Wal-Mart. Wal-Mart brought this original action seeking a peremptory writ of mandamus from this court compelling the district court to vacate its order.

The special master appointed by this court found that during the time Wal-Mart was represented by Smith, the policies, procedures, and practices of which he was informed did not include any confidential information, trade secrets, or anything that was not discoverable. However, the special master recommended that a peremptory writ of mandamus be issued directing the district court to disqualify Petitt and Van Steenberg from further representation of Holden in her action against Wal-Mart. The special master reasoned that "the nexus between [the Pottorff

case and the instant case], both in type and time of occurrence, is too close to avoid the appearance of impropriety, whether in the subjective eyes of Wal-Mart employees, or of the legally recognized reasonable person."

## ASSIGNMENT OF ERROR
Wal-Mart alleges that the district court erred in failing to disqualify Van Steenberg.

## STANDARD OF REVIEW
In a mandamus action, the relator has the burden of proof and must show clearly and conclusively that it is entitled to the particular thing the relator asks and that the respondent is legally obligated to act. *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995); *State ex rel. Scherer v. Madison Cty. Comrs.*, 247 Neb. 384, 527 N.W.2d 615 (1995).

## ANALYSIS

### PEREMPTORY WRIT OF MANDAMUS
Mandamus is a law action. It is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act in question, and (3) there is no other plain and adequate remedy available in the ordinary course of the law. *State ex rel. Scherer v. Madison Cty. Comrs., supra*; *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994); *State ex rel. Creighton Univ. v. Hickman*, 245 Neb. 247, 512 N.W.2d 374 (1994).

To warrant the issuance of a peremptory writ of mandamus to compel the performance of a legal duty to act, (1) the duty must be imposed by law, (2) the duty must still exist at the time the writ is applied for, and (3) the duty must be clear. *State ex rel. FirsTier Bank v. Mullen, supra*; *State ex rel. Creighton Univ. v. Hickman, supra*. Mandamus lies only to enforce performance of a mandatory ministerial act or duty and is not available to control judicial discretion. *Id*. The general rule is that an act or duty

is ministerial if there is an absolute duty to perform in a specified manner upon the existence of certain facts. *State ex rel. FirsTier Bank v. Mullen, supra*; *State ex rel. FirsTier Bank v. Buckley*, 244 Neb. 36, 503 N.W.2d 838 (1993).

## "SUBSTANTIALLY RELATED" TEST

Our first inquiry, and to a great extent the resolution of this action, involves a determination of what is meant by the phrase "substantially related subject matter." In *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 987, 458 N.W.2d 245, 249-50 (1990), this court announced the rule that " '[a]n attorney, after receiving the confidence of a client, may not enter the service of others whose interests are adverse to such client, in the same subject-matter to which the confidence relates, or in matters so closely allied thereto as to be, in effect, a part thereof.' " In *State ex rel. FirsTier Bank v. Buckley*, 244 Neb. at 45, 503 N.W.2d at 844, this court expanded the rule announced in *State ex rel. Freezer Servs., Inc.*, by stating that

> an attorney must avoid the present representation of a cause against a client of a law firm . . . which he or she . . . formerly [represented], and which cause involves a subject matter which is the same as or substantially related to that handled by the former firm while the present attorney was associated with that firm.

See, also, *State ex rel. FirsTier Bank v. Mullen, supra*. However, this general rule arose, and has only been applied, in the context where an attorney or attorneys ceased working for a law firm that represented a particular client and then began working for another law firm in a position adversarial to that client. See, *id.*; *State ex rel. FirsTier Bank v. Buckley, supra*.

In the instant case, no attorneys switched law firms. Instead, Smith of Van Steenberg formerly defended Wal-Mart, and Petitt of Van Steenberg is now suing Wal-Mart. Nonetheless, this court has made it patently clear that "confidences and secrets possessed by an attorney are presumptively possessed by other members of the attorney's firm." *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. at 389, 534 N.W.2d at 579. Accord, *State ex rel. Freezer Servs., Inc. v. Mullen, supra*. As such, an attorney or law firm must avoid the present representation of a cause

against a client that the attorney or law firm formerly represented, and which cause involves a subject matter which is the same as or substantially related to that formerly handled by the attorney or law firm.

In *State ex rel. FirsTier Bank v. Buckley*, 244 Neb. at 44, 503 N.W.2d at 843, we stated that "[i]n defining 'substantially related,' the court looked at whether counsel may have received confidential information from the former client that could be used against it in the subsequent representation." However, it is now necessary to further define what constitutes a "substantially related subject matter."

In fashioning a "substantially related subject matter" test, a court must balance several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on parties and the entire judicial process. *State ex rel. Creighton Univ. v. Hickman*, 245 Neb. 247, 512 N.W.2d 374 (1994); *State ex rel. FirsTier Bank v. Buckley, supra*. However, the preservation of client confidences is given greater weight in that balancing. *State ex rel. FirsTier Bank v. Buckley, supra*.

Mindful of these competing interests, we determine that the subject matters of two causes are "substantially related" if the similarity of the factual and legal issues creates a genuine threat that the affected attorney may have received confidential information in the first cause that could be used against the former client in the present cause.

Simply stated, if the court determines that the unique factual and legal issues presented in both cases are so similar that there exists a genuine threat that confidential information may have been revealed in the previous case that could be used against the former client in the instant case, then disqualification must ensue.

A nonexhaustive list of the factors a court may consider in making this determination includes: whether the liability issues presented are similar; whether any scientific issues presented are similar; whether the nature of the evidence is similar; whether the lawyer had interviewed a witness who was a key in both causes; the lawyer's knowledge of the former client's trial strategies, negotiation strategies, legal theories, business prac-

tices, and trade secrets; the lapse of time between causes; the duration and intimacy of the lawyer's relationship with the clients; the functions being performed by the lawyer; the likelihood that actual conflict will arise; and the likely prejudice to the client if conflict does arise.

Clearly, the "appearance of impropriety" and attempted screening procedures ("Chinese Walls") do not address whether two causes are "substantially related" and, thus, are not factors that may be considered in determining whether or not to disqualify an attorney or firm.

### WHETHER CAUSES ARE "SUBSTANTIALLY RELATED"

In the instant case, Wal-Mart asserts that the district court erred in failing to disqualify Van Steenberg. The parties are not disputing what the factual and legal issues are, but instead what implications they have on the disqualification decision. It is not disputed that Van Steenberg's interests are materially adverse to Wal-Mart's or that the information Smith acquired through his previous defenses of Wal-Mart is imputed to the entire Van Steenberg law firm. Thus, it is only left to be determined whether any of the previous cases in which Van Steenberg defended Wal-Mart are "substantially related" to the instant case against Wal-Mart.

Of the four cases in which Van Steenberg defended Wal-Mart, the case with factual and legal issues most closely related to the instant case is Pottorff v. Wal-Mart Stores, Inc., Scotts Bluff County District Court, docket 38913. As such, we must determine whether the Pottorff case and the instant case are substantially related.

In the instant case, Holden asserts that Wal-Mart's negligence caused her to suffer a strained knee and sprained ankle when she fell into a hole located in the store's parking lot. Approximately 1 year after Holden was injured, but 2 years before Petitt entered an appearance as Holden's counsel, Van Steenberg concluded its defense of Wal-Mart in the Pottorff case. In the Pottorff case, the jury found that Wal-Mart's negligence caused Pottorff to suffer a bulging disk, an injured elbow, headaches, and leg pain when she slipped and fell in an area inside the store that had previously been wet-mopped.

Wal-Mart asserts that these cases are substantially related because in both cases a customer was injured in a fall on Wal-Mart's premises, the petitions alleged that Wal-Mart was negligent in failing to properly maintain its premises and in failing to warn of dangerous conditions, and Wal-Mart asserted contributory negligence and assumption of risk as defenses. Conversely, Van Steenberg, appearing amicus curiae, asserts that these cases are not substantially related because the Pottorff case involved a slip and fall on a slick floor, while the instant case involves a fall into a hole; the Pottorff case involved a floor, while the instant case involves a parking lot; and the accident in the Pottorff case happened inside the store, while the accident in the instant case happened outside the store.

Wal-Mart correctly asserts that the pleadings in these cases are similar. However, the mere fact that the pleadings are similar does not make the two cases substantially related. The differences in the factual and legal issues, where a plaintiff falls into a hole in a parking lot as opposed to where a plaintiff falls on a wet floor inside a store, are crucial and are not outweighed by the similarities.

We agree with the special master's findings that during the time Wal-Mart was represented by Smith, the policies, procedures, and practices Smith was told about did not include any trade secrets or anything that was not discoverable. Courts have recognized that defense strategies are confidential information that may be factored into the disqualification decision. See, e.g., *SLC Ltd. V v. Bradford Group West, Inc.*, 999 F.2d 464 (10th Cir. 1993); *Texaco, Inc. v. Garcia*, 891 S.W.2d 255 (Tex. 1995); *Gellman v. Hilal*, 159 Misc. 2d 1085, 607 N.Y.S.2d 853 (1994). However, the defense strategies utilized in these types of relatively uncomplicated slip-and-fall actions are generally commonplace and routine. Wal-Mart did not assert that Van Steenberg became privy to any defense strategies that are unique, unexpected, unusual, or novel. Thus, we determine that an outside firm, with no prior association with Wal-Mart, would have the same or similar practical knowledge of how Wal-Mart would defend against this action and would have the same discovery opportunities.

Because Van Steenberg did not acquire any specialized knowledge of defense strategies or any other discovery advantages, we conclude that the similarity of the factual and legal issues does not create a genuine threat that Van Steenberg may have received confidential information from Wal-Mart that could be used against Wal-Mart in the instant case.

Because Wal-Mart failed to meet its burden of clearly showing that it has a legal right to the relief sought, we determine that the district court had no alternative but to deny Wal-Mart's motion to disqualify Van Steenberg. See, *State ex rel. Scherer v. Madison Cty. Comrs.*, 247 Neb. 384, 527 N.W.2d 615 (1995); *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994); *State ex rel. Creighton Univ. v. Hickman*, 245 Neb. 247, 512 N.W.2d 374 (1994). Since the district court did not have a clear legal duty to act at the time the writ was applied for, we decline to issue the requested writ. See, *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995); *State ex rel. Creighton Univ. v. Hickman, supra.*

## CONCLUSION

We decline to issue a peremptory writ of mandamus compelling the district court to vacate its order denying Wal-Mart's motion to disqualify Van Steenberg from further representation of Holden in her tort action, Holden v. Wal-Mart Stores Inc., Scotts Bluff County District Court, docket 41883.

PEREMPTORY WRIT DENIED.

WHITE, C.J., concurring.

In *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 986, 458 N.W.2d 245, 249 (1990), the court framed the issue as follows: "[W]hether a law firm which represents one party in a pending lawsuit must be disqualified from further representation of that party when the law firm hires attorneys and personnel *who have worked closely with and represented the opposing party* in that same litigation." (Emphasis supplied.) We answered in the affirmative.

In my judgment, that statement contains the sole test for disqualification of counsel. I concur.